ORIGINAL

**UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
JUL 30 2004

Shell Oil Company

Plaintiff,

v.

The United States,

Defendant.

No. 04-1240C

## COMPLAINT

For its Complaint, Plaintiff, Shell Oil Company ("Shell" or "Plaintiff") alleges as follows:

## INTRODUCTION

1. Between 1984 and 1994, Plaintiff entered into a series of contracts with the United States Government for the purchase of military jet fuel.

2. Each contract contained an economic price adjustment clause that permitted the Government to set fuel prices each month during the contract term.

3. In a series of decisions, the United States Court of Appeals for the Federal Circuit and the Court of Federal Claims held that the Government's economic price adjustment clause was illegal. *Barrett Refining Corp. v. United States*, 42 Fed. Cl. 128 (1998), *on further proceeding*, 45 Fed. Cl. 166 (1999), *aff'd in part*, 242 F.3d 1055 (Fed. Cir. 2001), *reh'g denied*, 50 Fed. Cl. 567 (Apr. 18, 2001); *Phoenix Petroleum Co. v. United States*, No. 98-5124, 1999 U.S. App. LEXIS 16939 (Fed. Cir. July 23, 1999); *Gold Line Refining, Ltd. v. United States*, 43 Fed. Cl. 291, 296 (1999), *on further proceeding*, 54 Fed. Cl. 285 (2002); *Pride Cos., L.P. v. United*

*States*, No. 95-597C, 2000 US Claims LEXIS 213 (May 10, 2000); *La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003); *Berry Petroleum Co. v. United States*, No. 02-1462 (Fed. Cl. June 10, 2003) (bench ruling); *Calcasieu Ref. Co. v. United States*, No. 02-1219C, 2003 WL 22049528 (Fed. Cl. July 31, 2003); *Tesoro Hawaii Corp., et al. v. United States*, No. 02-704C (Fed. Cl. Sept. 15, 2003); *Navajo Ref. Co., L.P. v. United States*, 58 Fed. Cl. 200 (2003); *Sunoco, Inc. v. United States*, 59 Fed. Cl. 390 (2004); *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992).

4. The Government has admitted in prior cases, including *Barrett Refining Corp.* and *Pride Cos., supra*, that the price adjustment clauses, known as Clause B19.33 as contained in contracts executed between Plaintiff and Defendant, are illegal.

5. The Government has benefited from the illegal price adjustment clause because it resulted in material underpayments for the fuels purchased from the plaintiff.

6. Plaintiff now seeks to be made whole.

**THE PARTIES**

7. Plaintiff Shell Oil Company, is a Delaware corporation with its principal place of business at 910 Louisiana, Houston, Texas.

8. At the times pertinent to this suit, Shell Oil Company owned and operated several refineries located in the United States at which aviation fuels were refined.

9. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is a primary level field activity of the Defense Logistics Agency, an agency of the Department of Defense. The mission of DESC is to supply petroleum products to U.S. military forces and civilian agencies. At all times relevant to the Complaint, DESC was

known as the Defense Fuel Supply Center ("DFSC"). On or about February 1, 1998, DFSC changed its name to DESC.

## JURISDICTION

10. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002) and 41 U.S.C. §§ 601-13 (2002).

## STATEMENT OF THE CASE

### The Contracts

11. DESC is the principal purchaser of military fuel for the Department of Defense and the single largest purchaser of fuel in the world. From at least 1980 to 1994, DESC was the sole purchaser and user of military type jet fuels in the United States, and purchased over $90 billion of military fuel during this period. DESC's monopsony in the military jet fuel market has given DESC substantial market power and ability to affect the prices it paid for military fuels.

12. DESC effected its purchases of fuel by soliciting competitive offers from petroleum refining companies for various refined petroleum product requirements for use at locations across the United States.

13. From 1984 to 1994, Shell and DESC entered into the following contracts for the purchase of 4,397,537,598 gallons of military jet fuel:

Contract No. DLA600-84-D-0550 – 507,117,610 gallons

Contract No. DLA600-85-D-0476 – 63,416,720 gallons

Contract No. DLA600-85-D-0522 – 17,223,005 gallons

Contract No. DLA600-86-D-0457 – 217,907,765 gallons

Contract No. DLA600-86-D-0598 – 227,236,879 gallons

Contract No. DLA600-86-D-0865 – 215,791,164 gallons

Contract No. DLA600-87-D-0507 – 251,864,069 gallons

Contract No. DLA600-87-D-0550 – 185,335,525 gallons

Contract No. DLA600-88-D-0508 – 255,749,095 gallons

Contract No. DLA600-88-D-0576 – 164,841,182 gallons

Contract No DLA600-89-D-0482 – 182,883,376 gallons

Contract No. DLA600-89-D-0560 – 162,688,586 gallons

Contract No. DLA600-90-D-0453 – 15,023,317 gallons

Contract No. DLA600-90-D-0480 – 289,895,899 gallons

Contract No. DLA600-91-D-0504 – 336,264,613 gallons

Contract No. DLA600-92-D-0473 – 375,143,732 gallons

Contract No. DLA600-92-D-0520 – 7,526,730 gallons

Contract No. DLA600-92-D-0560 – 68,275,696 gallons

Contract No. DLA600-93-D-0505 – 327,250,416 gallons

Contract No. DLA600-93-D-0535 – 58,718,301 gallons

Contract No. DLA600-93-D-0567 – 42,085,870 gallons

Contract No. DLA600-94-D-0472 – 56,162,801 gallons

Contract No. DLA600-94-D-0485 – 48,559,694 gallons

Contract No. DLA600-94-D-0506 – 7,549,710 gallons

Contract No. DLA600-94-D-0543 – 313,025,843 gallons

14. The contracts provided for the purchase of three different kinds of fuels: JP-4, JP-5, and JP-8 military jet fuel. Typically, JP-4 is a blend consisting of between approximately 50% -

70% naphtha and 50% - 30% kerosene. JP-5 is primarily a kerosene based fuel. In 1993, DESC began purchasing JP-8, primarily a kerosene based fuel, in lieu of JP-4. JP-4, JP-5, and JP-8 type jet fuel are manufactured to military specifications. There is no commercial jet fuel market for either JP-4, JP-5, or JP-8. However, JP-8 may be downgraded and sold as commercial jet fuel. Shell's contracts contained DESC's standard economic price adjustment clause, Clause B19.33, *Economic Price Adjustment-Published Market Price (Domestic Bulk).* Clause B19.33 permitted DESC to change the monthly price it paid Shell for the fuel.

15. DESC has acknowledged at least two authorized purposes for its economic price adjustment clause: (a) to protect DESC and Shell against market fluctuations, and (b) to ensure that the prices DESC paid Shell for the fuel under the contracts reflected at least the fair market value.

16. Shell relied on Clause B19.33 to protect it from market fluctuations when it prepared its offer for each of the contracts.

17. Clause B19.33 *(preface)* required Shell to warrant that its prices did not include any contingency allowance to cover possible increases in offered prices. The provision stated:

> The Contractor represents that the unit prices set forth in this contract do not include any contingency allowance to cover the possibility of increases in the reference price(s) in the Contractor's bid or proposal.

18. Clause B19.33 established a two-part system to pay Shell for fuel deliveries. First, Shell received an interim monthly price computed according to a privately-published index known as *Oil Price Information Service* ("OPIS"). Some months after the OPIS interim price was paid, DESC computed and paid the final monthly price (for the same fuel delivery) using an official Department of Energy ("DOE") publication entitled *Petroleum Marketing Monthly* ("PMM"). The interim price under OPIS and the final price under PMM usually were different.

19. Final price adjustments were made by contract modification either (a) authorizing supplemental payments to Shell, or (b) memorializing credits due DESC against future invoices to be submitted by Shell.

20. Contrary to the acknowledged purposes of DESC's price adjustment clause, DOE did not design or intend for PMM to set or adjust prices in response to market fluctuations. DOE publishes PMM for Congressional use in developing broad energy policy, not to adjust contract prices. As such, PMM did not reflect the fair market value for the fuel DESC purchased.

21. DESC's use of PMM in its price adjustment clause failed to accomplish the acknowledged purposes of the clause. DESC knew that PMM was not designed to set or adjust prices in response to market fluctuations.

22. DESC could not be persuaded to discontinue its use of the PMM in its price adjustment clause despite the objections of fuel suppliers. *Barrett*, 45 Fed. Cl. at 171; *LaGloria*, 56 Fed. Cl. at 226. DESC in fact considered its price adjustment clause to be non-negotiable and disfavored any challenge to its use. *Navajo*, 58 Fed. Cl. at 214.

23. PMM did not reflect the fair market value of the fuel DESC purchased. As a result of DESC's use of PMM in clause B19.33, the prices Shell was paid by DESC for fuel were below fair market value.

24. DESC's economic price adjustment clause, B19.33, violated Federal Acquisition Regulation ("FAR") Subpart 16.2. In order to fairly allocate the risk of economic uncertainty in long-term contracts, FAR 16.2 provides that prices must be tied to the supplier's market. FAR § 16.203 allows for fixed-price contracts with economic price adjustment. Authorized economic price adjustments are of three general types:

(a) Adjustments based on established prices.
(b) Adjustments based on actual costs of labor or material.

(c) Adjustments based on cost indexes of labor or material.

25. In a series of decisions, the United States Court of Appeals for the Federal Circuit and the Court of Federal Claims held that Clause B19.33 violated law and regulation because it did not base price adjustments on an index that approximately tracked the economic changes affecting the contract, and was therefore unauthorized. *Barrett Refining Corp. v. United States*, 42 Fed. Cl. 128 (1998), *on further proceeding*, 45 Fed. Cl. 166 (1999), *aff'd in part*, 242 F.3d 1055 (Fed. Cir. 2001), *reh'g denied*, 50 Fed. Cl. 567 (Apr. 18, 2001); *Phoenix Petroleum Co. v. United States*, No. 98-5124, 1999 U.S. App. LEXIS 16939 (Fed. Cir. July 23, 1999); *Gold Line Refining, Ltd. v. United States*, 43 Fed. Cl. 291, 296 (1999), *on further proceeding*, 54 Fed. Cl. 285 (2002); *Pride Cos., L.P. v. United States*, No. 95-597C, 2000 US Claims LEXIS 213 (May 10, 2000); *La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003); *Berry Petroleum Co. v. United States*, No. 02-1462 (Fed. Cl. June 10, 2003) (bench ruling); *Calcasieu Ref. Co. v. United States*, No. 02-1219C, 2003 WL 22049528 (Fed. Cl. July 31, 2003); *Tesoro Hawaii Corp., et al. v. United States*, No. 02-704C (Fed. Cl. Sept. 15, 2003); *Navajo Ref. Co., L.P. v. United States*, 58 Fed. Cl. 200 (2003); *Sunoco, Inc. v. United States*, 59 Fed. Cl. 390 (2004); *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. C. 405 (1992).

26. DESC benefited from its utilization of this unauthorized price adjustment clause as it resulted in payments to Shell that were materially less than the fair market value of the fuel DESC purchased.

**<u>Shell's Certified Claim</u>**

27. Pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.* ("CDA"), on December 31, 2002, Shell submitted a certified claim to the Contracting Officer seeking an equitable adjustment in the amount of $115,379,943 plus interest to compensate for the

underpayments resulting from the operation of Clause B19.33 under the following twenty-five contracts it entered into with DESC:

DLA600-84-D-0550
DLA600-85-D-0476
DLA600-85-D-0522
DLA600-86-D-0457
DLA600-86-D-0598
DLA600-86-D-0865
DLA600-87-D-0507
DLA600-87-D-0550
DLA600-88-D-0508
DLA600-88-D-0576
DLA600-89-D-0482
DLA600-89-D-0560
DLA600-90-D-0453
DLA600-90-D-0480
DLA600-91-D-0504
DLA600-92-D-0473
DLA600-92-D-0520
DLA600-92-D-0560
DLA600-93-D-0505
DLA600-93-D-0535
DLA600-93-D-0567
DLA600-94-D-0472
DLA600-94-D-0485
DLA600-94-D-0506
DLA600-94-D-0543

28. On August 1, 2003, the Contracting Officer issued a final decision on Shell's claim. The Contracting Officer denied Shell's claim in its entirety, stating:

> Shell already received what it expected for the fuel it sold the Government. Re-pricing the fuel years after it was delivered and sold to the Government is simply unjustified.

Moreover, the Contracting Officer raised affirmative defenses to Shell's claim, and further stated that if a court decided Shell was entitled to re-price its contracts that it would assert a claim against Shell for overpayment.

29. Pursuant to the CDA, Shell hereby timely files suit upon and appeals DESC's August 1, 2003 final decision denying Shell's claim.

**COUNT I**
**(Illegality)**

30. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 29 as if fully set forth herein.

31. DESC awarded and administered each of Shell's contracts in violation of law and regulation, *inter alia*, by using Clause B19.33, an illegal and unauthorized economic price adjustment clause. Shell was injured because DESC's use of Clause B19.33 resulted in prices that were materially below fair market value.

32. DESC's violation of law and regulation damaged Shell.

33. Shell is entitled to recover the fair market value of the fuel it delivered to DESC in an amount of at least $115,379,943 plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Breach of Contract)**

34. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 33 as if fully set forth herein.

35. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition upon which Shell reasonably relied in entering into the contracts.

36. Upon entering into the contracts with Shell, DESC had a contractual obligation to comply with all laws and controlling regulations, including the FAR. DESC breached the contracts by violating this obligation and using an illegal pricing clause in Shell's contracts.

37. The use of an economic price adjustment clause that protected DESC and Shell against market fluctuations, and ensured that the prices DESC paid Shell for fuel under the long-

term contracts reflected at least fair market value was a material condition of the contracts upon which Shell reasonably relied in entering the contracts.

38. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

39. In contravention of DESC's contractual obligations, DESC based price adjustments on PMM. PMM was not designed or intended to be used to set or adjust prices. As a result, the prices paid by DESC materially were below fair market value.

40. DESC's violation of law and regulation constituted a breach of contract.

41. DESC's use of PMM to set or adjust prices under the contract constituted a breach of contract.

42. DESC's breach of contract damaged Shell.

43. Shell is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $115,379,943 plus interest, by way of rescission and restitution or damages.

**COUNT III**
**(Implied-In-Fact Contract)**

44. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45. DESC awarded and administered each of Shell's contracts in violation of law and regulation.

46. DESC's violation of law and regulation rendered at least the price terms of Shell's contracts invalid and unenforceable.

47. There is an implied-in-fact contract to pay Shell the fair market value of the fuel Shell delivered to DESC.

48. Shell is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $115,379,943 plus interest by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT IV**
**(Failure of Consideration and Frustration of Purpose)**

49. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Shell reasonably relied in entering into the contracts and a material purpose of the contracts.

51. The illegal nature of the B19.33 pricing clauses in Shell's contracts caused a failure of consideration.

52. The use of an economic price adjustment clause that protected DESC and Shell against market fluctuations, and ensured that the prices DESC paid Shell for the fuel under the long-term contracts reflected at least fair market value, was a material part of the consideration upon which Shell reasonably relied in entering into the contracts and a material purpose of the contracts.

53. DESC violated law and regulation in awarding and administering the contracts.

54. DESC based the price adjustments on PMM. PMM was not designed or intended to be used to set or adjust prices. The use of PMM resulted in prices that were materially below fair market value.

55. The B19.33 pricing clauses and Shell's contracts did not comply with law and the FAR. Compliance with law and the FAR was a material condition of each contract. Failure of this material condition frustrated the purpose of each contract.

56. DESC's violation of law and regulation constituted a failure of consideration and frustrated the purpose of the contracts.

57. DESC's use of PMM constituted a failure of consideration and frustrated the purpose of the contracts.

58. This failure of consideration and frustration of the purpose of the contracts damaged Shell.

59. Shell is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $115,379,943 plus interest, by way of rescission and restitution.

**COUNT V**
**(Mistake)**

60. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. Parties to government contracts are presumed to intend that their contracts comply with governing procurement regulations, including the FAR.

62. For each contract included in this Complaint, Shell intended to enter a contract that complied with the FAR and which resulted in prices that reflected fair market value. Shell entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Shell reasonably relied in entering into the contracts.

63. Shell entered into and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Shell reasonably relied in entering into the contracts.

64. DESC did not comply with law and regulation in awarding and administering the contracts.

65. DESC based price adjustments on PMM. PMM was not designed or intended to be used to set or adjust prices. The use of PMM resulted in prices that were materially below fair market value.

66. If DESC did not knowingly award and administer contracts in violation of law and regulation, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

67. If DESC did not know that PMM was not designed or intended to be used to set or adjust prices, then DESC must be presumed to have used PMM with the intent that it was designed or intended to be used to set or adjust prices.

68. DESC must have intended to comply with the FAR when it entered the contracts and also must have intended to use a pricing clause which resulted in fair market value prices.

69. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Shell entered into and performed the contracts in violation of law and regulation.

70. As a result of the mistake, DESC and Shell entered into and performed the contracts using PMM to set or adjust prices.

71. If DESC and Shell had not been mistaken, DESC and Shell would not have entered into and performed contracts in violation of law and regulation.

72. If DESC and Shell had not been mistaken, DESC and Shell would not have entered into and performed contracts using DESC's illegal pricing clause and PMM to set or adjust prices.

73. Alternatively, if DESC was not mistaken in awarding an administering contracts in violation of law and regulation, then DESC knew or should have known of Shell's mistake and failed to fulfill its duty to timely disclose this mistake to Shell.

74. If DESC was not mistaken in awarding and performing contracts using PMM to set or adjust prices, then DESC knew or should have known of Shell's mistake and failed to fulfill its duty to timely disclose this mistake to Shell.

75. The parties' mutual mistake and/or DESC's failure to disclose Shell's unilateral mistake damaged Shell.

76. Shell is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $115,379,943 plus interest, by way of reformation, or rescission and restitution.

## PRAYER FOR RELIEF

WHEREFORE, Shell requests judgment as follows:

1. $115,379,943 plus interest, or such further amount as established prior to judgment;

2. Such other and further relief, including attorney's fees, costs and expenses as the Court may deem just and equitable.

Respectfully submitted,

Michael R. Charness
Vinson & Elkins L.L.P.
The Willard Office Building
1455 Pennsylvania Avenue NW
Suite 600
Washington, D.C. 20004
(202) 639-6780
(202) 639-6604 (facsimile)

Counsel for Shell Oil Company

Dated: July 30, 2004